FIRST DIVISION 

June 30, 2000 

No. 1-99-3237

LINDA HOJEK,

Plaintiff-Appellant, 

v.

KATHLEEN HARKNESS,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

William Taylor,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

During jury deliberations in this personal injury case, the jury sent a question to the trial court asking: "Were medical expenses covered by insurance?"  Both counsel for plaintiff and defense returned to the courtroom within minutes of being notified about the jury's question.  At that time,  the trial judge was involved in another trial.   The jury in this case continued to deliberate and reached a verdict before receiving any response to its question.  On appeal, plaintiff argues that the court's failure to answer the jury's question, while allowing deliberation of the jury to continue, when a jury instruction specifically addressed the issue of insurance,  prejudiced plaintiff and denied her a fair trial.  We agree and reverse and remand for a new trial.

FACTS

On December 16, 1995, plaintiff was in a car accident with defendant.  Plaintiff testified that, after the accident, she felt pain in her left neck and shoulder, and in her abdomen.  Because plaintiff was seven months pregnant, she initially received treatment from her obstetrician.  After the birth of her child, plaintiff continued to have pain in her neck and shoulder.  She testified that the pain continued to worsen, that it radiated down her arm,  and that it caused numbness.  Plaintiff stated that she could no longer engage in the active life she enjoyed before the auto accident.  She then sought treatment from a variety of physicians, including orthopedists, a neurosurgeon, a physicist, and rehabilitation therapists.  Diagnostic tests revealed that plaintiff suffered from herniated disks, and her treating physician testified that the auto accident caused these herniated disks.  The parties stipulated that her medical bills were $14,232.25.  Plaintiff's treating physician also testified that her injuries were permanent and that she would need future care and treatment.  As a result, plaintiff's counsel asked the jury to award her damages in an amount between $288,000 and $394,000.

At trial, defendant admitted her liability in the accident but challenged the nature and extent of plaintiff's injuries.  Defendant contended that plaintiff merely sustained a "soft tissue" injury and called her own expert medical doctor in support of this theory.  Defendant's expert witness testified that plaintiff suffered from progressive degenerative disease that preexisted the auto accident.  According to defendant's expert, the auto accident did not cause or aggravate plaintiff's preexisting condition and did not cause her herniated disks.  Based on this testimony, defense counsel requested that the jury award plaintiff an amount between $5,000 and $10,000.

According to the uncontested affidavit of plaintiff's counsel and the statements of the trial court on the record, the following series of events occurred during jury deliberations.  At approximately 2:50 p.m., the jury began deliberations.  Within the next hour, the jury sent the following question to the trial court, "Were medical expenses covered by insurance?"  At 3:55 p.m., the judge's sheriff notified counsel for both parties by telephone that the jury submitted a question, and they agreed to return to court.   Plaintiff's counsel arrived at the courtroom first about  4 p.m., and defense counsel arrived about 4:10 p.m.  Although the trial judge was engaged in another trial, before defense counsel arrived, the judge briefly stopped the trial and told plaintiff's counsel that he would give him the jury's question and a proposed reply when defense counsel arrived.  The court resumed the second trial.  Defendant's counsel arrived about 10 minutes later, at about 4:10 p.m.  The sheriff at that point, provided both counsel the jury's question and the court's proposed answer to the jury's question.  Specifically, the trial court proposed to answer the question with Illinois Pattern Jury Instruction, Civil, No. 2.13 which states: "[w]hether a party is insured has no bearing whatever on any issue that you must decide.  You must refrain from any inference, speculation, or discussion about insurance."  IPI Civil 3d No. 2.13.  Illinois Pattern Jury Instructions, Civil, No. 2.13 (3d ed. 1995) (hereinafter IPI Civil 3d No. 2.13).  Plaintiff's counsel agreed to the instruction, but defense counsel objected to answering the question with the instruction and wanted the trial judge to rule on the objection.  The judge, however, did not interrupt the second trial to rule on the objection. The jury in this case continued deliberating and its question regarding insurance went unanswered.  Around 5 p.m. the jury informed the court that it had reached a verdict.  The trial court then received the verdict from the jury in this case. 

The jury awarded plaintiff $21,000 itemized as follows: $8,000 for loss of normal life; $8,000 for past pain and suffering, and $5,000 for past medical expenses.  The jury awarded plaintiff no damages for future pain and suffering and for future medical expenses.  After the verdict was read, plaintiff's counsel moved for a mistrial based on the court's failure to answer the jury's question.  At that point, the trial court conducted a side bar and heard argument.  The following discussion occurred between the court and plaintiff's counsel:

"THE COURT: The jury had a question.  While the question was given and we put a phone call out to plaintiff's and defense counsel's attorneys, they did not arrive in a timely time, and therefore I started another trial.  As soon as that trial finished, I brought counsel in to see if they were ready to answer the question.  In fact, I gave both plaintiff and defense counsel the question earlier before the trial, along with my proposed answer, which would have said, 'Whether [
sic
] a party's insured has no bearing whatever on any issue that you must decide.  You must refrain from any inference, speculation, or discussion about insurance.'  I gave my deputy the question and my proposed answer to plaintiff's counsel and said if they had no problem, I would hand that to the jury.  The jury obviously decided that they didn't need to wait for my answer in terms of their question and therefore they reached a verdict.

[PLAINTIFF'S COUNSEL]: Plaintiff's counsel had no objection to the question.  It was defendant's counsel who wanted to wait to speak to the court relative to the instruction being given.

THE COURT: Right.  And we were in closing argument in another trial, and therefore I would not stop the other trial since this trial already took three days of other court's time [
sic
].  And the other trial had been waiting for the whole day to get their trial done while this trial was finished.  And since they had waited patiently till 3:00 o'clock to start a new trial, I felt they had the right to finish the trial.  Therefore motion for mistrial is denied." 

The court then entered judgment on the verdict.  Plaintiff argued in her posttrial motion that the court's failure to answer the jury's question as to whether medical expenses were covered by insurance while allowing deliberation of the jury to continue prejudiced plaintiff and denied her a fair trial.  The court denied plaintiff's posttrial motion and this appeal followed.

ANALYSIS

The general rule is that, when a trial court receives a question from the jury during deliberations, the court has a duty to instruct the jury further or clarify the point of law that has caused doubt or confusion.  
Van Winkle v. Owens -Corning Fiberglass 
Corp., 291 Ill. App. 3d 165, 172 (1997); 
People v. Millsap
, 189 Ill. 2d 155, 160 (2000);
 People v. Childs
, 159 Ill. 2d 217, 228-29 (1994);
 People v. Reid
, 136 Ill. 2d 27, 39 (1990).  The trial court, however, has discretion and in exercising that discretion, depending on the nature of the question, may choose to draft an answer to a jury question, or choose to abstain from responding.  We review the decision made by the trial judge in this case under an abuse of discretion standard.  
Van Winkle
, 291 Ill. App. 3d at 173.

Our research reveals one recent civil 
case that addressed the issue of a trial judge’s duty to answer a jury’s question during deliberations.  In 
Van Winkle v. Owens-Corning Fiberglass Corp
., 
plaintiff alleged that defendant conspired with others to suppress the health hazards of asbestos exposure.  During deliberations, the jury asked a question about the underlying charge of a civil conspiracy.  The trial court only referred the jury to the written jury instructions. 
 Finding this response to be an abuse of discretion, the appellate court first noted that the jury question manifested confusion on the law of civil conspiracy.  The court further explained that the question raised the issue of who could enter into a conspiracy, 
which was critical to deciding the merits of the defense.  Concluding that the trial court’s failure to answer the question substantially prejudiced the defendant, the court stated: "[I]n the midst of jury deliberations after a vigorously contested trial, a question from the jury deserves as much--if not more-- thoughtful consideration as did the original instruction." 
 Van Winkle
, 291 Ill. App. 3d at 174. 

The 
Van Winkle
 court relied heavily upon the reasoning of the Illinois Supreme Court in 
Childs, 
one of many criminal cases discussing the trial court’s duty to answer a jury question submitted during jury deliberations.
  
The 
Van Winkle
 court rejected 
the argument that the holding in  
Childs
 should be limited to criminal cases and found that "the supreme court's analysis in 
Childs
 applies fully to civil cases as well." 
 Van Winkle
, 291 Ill. App. 3d at 172.  In 
Childs
, the supreme court indicated that jurors are entitled to have their questions answered and trial judges have a duty to answer such questions. 
 Childs
, 159 Ill. 2d at 228.  "Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion."  
Childs
, 159 Ill. 2d at 229.  The duty to answer the jury's question applies even if the jury was properly instructed. 
 Childs
, 159 Ill. 2d at 229; see also 
Reid
, 136 Ill. 2d at 39.  Therefore, "[t]he failure to answer or the giving of a response which provides no answer to the particular question of law posed has been held to be prejudicial error." 
 Childs
, 159 Ill. 2d at 229.   

In 
Childs
, the jury requested clarification of jury instructions on an "intricate" and "difficult" point of law, namely, whether a  guilty verdict on armed robbery mandated a guilty verdict of murder or still allowed for the jury to find defendant guilty of voluntary or involuntary manslaughter.  In response, the trial court briefly attempted to answer the question through an 
ex parte 
communication, but this response did not clarify the legal issues raised in the jury's question.  While the trial court admitted that it did not understand the question, it made no effort to clarify the jury's question.  The supreme court found that the question reflected juror confusion over a substantive legal issue and the trial court had a duty to answer it.  Therefore, the trial court’s 
failure to address the problem that triggered the question substantially prejudiced the defendant.  
Childs
, 159 Ill. 2d at 234.  The supreme court in reversing the judgment concluded, "It is not apparent to us that the manner in which the court dealt with the jury's inquiry was not a factor in the rendering of that verdict."  
Childs
, 159 Ill. 2d at 234-35.

While the jury is entitled to have its questions answered, the supreme court has not mandated that the trial court answer all questions.  The court thus recognizes that under appropriate circumstances the trial court may exercise its discretion and decline to respond to the jury's question.  
Reid
, 136 Ill. 2d at 36; 
Millsap
, 189 Ill. 2d at 161.  The supreme court has determined that a trial judge should not answer a jury's question "when the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or where the giving of an answer would cause the court to express an opinion that would likely direct a verdict one way or another." 
 Millsap
, 189 Ill. 2d at 161.
  

In 
Reid
, for instance, the jury asked the trial court whether it could find defendant guilty of one charge and not the other.  Although the answer to this question was yes, the trial court only instructed the jury to review the original instructions and keep deliberating.  The trial court concluded that the jury was sufficiently instructed on the applicable law because it received guilty and not guilty verdict forms on each charge.  On review, the supreme court did not find the court's response an abuse of discretion.  
Reid
, 136 Ill. 2d at 40.  Besides noting the different verdict forms, the supreme court agreed with the trial court that a direct answer to the question may have indicated a specific verdict, which could have been detrimental to either side. 
 Reid
, 136 Ill. 2d at 41.  Thus, a trial court may properly decline to answer a jury's question that falls within the confines of the original written instructions or appears to seek an opinion from the court that may direct a verdict one way or the other.

This court, however, recently found reversible error from a trial judge's decision to abstain from answering a jury's question that the judge recognized deserved a response.   
People v. Hill
, 1-

98-0102, slip op. at 9 (March 6, 2000).  In
 Hill
, the trial judge that presided over the trial was absent from the courtroom during jury deliberations.  The jury submitted two questions.  A substitute judge reviewed the questions and noted an appropriate response.  The substitute judge, however, decided not to answer the questions, because he was not the trial judge and was not familiar with the evidence of the case.  As a result of the decision made by the substitute judge to abstain from answering the questions, the jury received no response to its questions.  The jury returned guilty verdicts against the defendant.  On appeal, this court held that abstention was not an appropriate response and that the failure of the substitute judge to answer the two questions submitted by the jury "was error and manifestly prejudicial to the defendant." 
 Hill
, 1-98-0102, slip op. at 9.

We find the analysis of 
Van Winkle, Childs
, and 
Hill 
controlling on the issue presented here regarding the court's failure to answer the jury's question.
  During the trial, the jury submitted a simple question: "Were medical expenses covered by insurance?"  Neither party raised the issue of insurance during the trial.  However, the jury received no answer to its question regarding insurance and received no guidance as to what if any role the issue of insurance should play in its deliberation process.  
During the deliberation process, the jury brought a question to the attention of the trial court concerning a substantive legal issue, the application of health insurance to the issue of damages in the context of a personal injury case.  This particular question went to the issue at the heart of the case, namely, damages.  Liability was not contested, and the evidence at trial focused on the extent of the plaintiff's damages.  The written jury instructions submitted to the jury made no mention of insurance.  Therefore, at the point when the jury asked the question, the original written jury instructions which were available for the jury to rely on provided no explanation of the law on this issue.  The question also did not involve a question of fact, and a proper answer to this question would not have caused the court to express an opinion that may have directed a verdict one way or another.  Consequently, the jury’s question about whether medical expenses were covered by insurance was not at all like the question asked in 
Reid
.  In 
Reid
, the jury sought an opinion from the court regarding issues already covered in the written jury instructions and such opinion could have directed a verdict one way or the other.  
Reid
, 136 Ill. 2d at 41.

Moreover, a simple instruction would have been useful to the jury and provided an accurate answer to their question.  IPI Civil 3d No. 2.13 directly addresses the issue of insurance and answers the jury's question.  It states that "[w]hether a party is insured has no bearing whatever on any issue that you must decide.  You must refrain from any inference, speculation, or discussion about insurance."  IPI Civil 3d No. 2.13.  This simple, instruction would have resolved the confusion of the jurors and properly informed them not to infer, speculate or discuss whether medical expenses were covered by insurance.  The trial judge correctly determined that this instruction was the appropriate response but failed to communicate the response to the jury and allowed the jury to continue deliberating without this answer to their question. 
  

The court stated that it had to finish another trial and that, following telephone calls to the parties' counsel, they did not return to the courtroom in a timely manner.  The record reflects that the court chose an appropriate response and had that response communicated to plaintiff's counsel and defense counsel.  Moreover, both counsel for plaintiff and defense were in the courtroom within minutes of being notified about the jury's question.  The fact that the court was engaged in another trial was problematic.  However, the trial court had an obligation to answer the jury's question if deliberation by the jury in this case was to properly continue.  
People 
v. 
Brouder
, 168 Ill. App. 3d 938, 948 (1988); 
Hill
, 1-98-0102, slip op. at 9; 
Van Winkle
, 291 Ill. App. 3d at 173. 

Defendant claims that even if the trial court had answered the jury's question, IPI Civil 3d No. 2.13 would not have been an appropriate response because this instruction only applies to liability insurance and not to medical insurance.  The Notes on Use to this instruction undermine this argument.  IPI Civil 3d No. 2.13, Notes on Use.  The Notes on Use refer generally to insurance coverage and do not limit this instruction for use with any specific type of insurance.  The instruction therefore should be used to prevent the jury from any inference, speculation or discussion about insurance.  In this case, when the jury asked the trial court the question, "Were medical expenses covered by insurance?," the jury was in the process of deliberating on the issue of damages.  The exact reason why the jury submitted this question is not relevant to our analysis.  Although insurance was not referenced during the trial, the jury's questions about insurance may have been a result of some inference from the evidence or it may have been the result of the jury’s use of its own collective experiences and common sense.  However, once the jury asked the trial court whether medical expenses were covered by insurance, the trial court then had a duty to instruct the jury that whether a party is insured has no bearing on any issue the jury must decide and the jury "must refrain from any inference, speculation, or discussion about insurance."  IPI Civil 3d No. 2.13.

Moreover, the collateral source rule provides that the jury should not consider the payment of health insurance when
 deciding a plaintiff's damages because a plaintiff may recover the entire amount of damages sustained from medical bills regardless of who paid the bills. 
Smith v. General Casualty Co.
, 75 Ill. App. 3d 971, 974 (1979); 
Boden v. Crawford
, 196 Ill. App. 3d 71, 76 (1990) (a plaintiff's damages are not decreased
 because he or she received benefits from a source independent of and collateral to the wrongdoer);
 
Lang v. Lake Shore Exhibits, Inc.
, 305 Ill. App. 3d 283, 289 (1999) (the purpose of the collateral source rule is to preclude the jury from considering payment of bills by insurance when it decides the issue of plaintiff's damages).  IPI Civil 3d No. 2.13 is the appropriate instruction to tender to the jury to prevent it from considering payments from medical insurance carriers and to prevent a violation of the collateral source rule.

In this case, the jury received conflicting evidence as to plaintiff's damages.  Plaintiff's treating physician testified that the auto accident caused plaintiff to sustain multiple herniated disks resulting in a permanent injury to her spine.  Defendant's expert witness testified that plaintiff only sustained muscle strain from the auto accident and that most of her treatment was not causally related to the accident.  Although the jury's verdict in favor of plaintiff for $21,000 supports the conclusion that the jury believed most of the testimony of defendant's expert witness, the jury awarded her more damages for her medical bills than defendant's witness opined were related to the auto accident.  The award was also far less than the total amount of plaintiff's bills.  

It is true that the amount of medical bills received into evidence
 
"does not automatically constitute a minimum level of recovery which is binding upon both a jury and a court of review." 
 Montgomery v. City of Chicago
, 134 Ill. App. 3d 499, 503 (1985).  The jury has the exclusive function to resolve conflicts in the evidence as to proximate causation and the reasonableness of plaintiff's damages.  Nevertheless, consideration of the fact that plaintiff has or lacks health insurance is prejudicial and may constitute reversible error.  
Plooy v. Paryani
, 275 Ill. App. 3d 1074, 1087 (1995);
 
Biehler v. White Metal Rolling & Stamping Corp.
, 30 Ill. App. 3d 435, 444 (1975). 

CONCLUSION

We appreciate the challenges faced by trial court judges when administering justice in servicing a busy court schedule.  We are mindful of the work ethic demonstrated in this case by the trial judge in simultaneously servicing two separate jury trials and in no way do we criticize this work ethic.  However, when as here, "a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy."  
Bollenbach v. United States
, 326 U. S. 607, 612-13, 90 L. Ed. 350, 354, 66 S. Ct. 402, 405 (1945).  Such specific and accurate answer to the jury's question in this case was readily provided by IPI Civil 3d No. 2.13.  We note that the trial judge properly identified IPI Civil 3d No. 2.13 as the correct response to the jury's question as to whether medical expenses were covered by insurance.  Given the considerable importance of this question to the resolution of the vigorously contested issue of damages, we conclude that the failure of the trial court to communicate the answer to the jury while allowing the jury to continue to deliberate was prejudicial error and requires reversal.  In so concluding, we note that the better practice would have been for the trial court judge to have briefly interrupted the second trial, overrule defendant's objection to IPI Civil 3d No. 2.13, and answer the jury's question with IPI Civil 3d No.2.13.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial on damages only.

Reversed and remanded.       

RAKOWSKI and GALLAGHER, JJ., concur.